UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DUNCAN GOLF MANAGEMENT, dba Lakeridge Golf Course, SAMANTHA BEAUCHAMP, <br><br> Plaintiffs <br><br> v. <br><br> NEVADA YOUTH EMPOWERMENT PROJECT, et al., <br><br> Defendants | Case No.: 3:23-cv-00666-ART-CSD <br><br> **Order** <br><br> Re: ECF Nos. 103, 104, 109 |

Attorney Philip A. John, Esq., currently of the law firm Wood, Smith, Henning & Berman, LLP, (Wood Smith), and formerly of the law firm McCormick Barstow Sheppard Wayte & Carruth (McCormick Barstow), filed a motion for protective order and motion for sanctions on behalf of one of the plaintiffs in this action, Duncan Golf Management dba Lakeridge Golf Course (Duncan), concerning a subpoena issued to McCormick Barstow. (ECF Nos. 103, 104.) Mr. John represented Duncan in the case of *Samantha Beauchamp v. Duncan Golf Management dba Lakeridge Golf Course*, case CV20-00168, in the Second Judicial District Court of the State of Nevada in and for the County of Washoe (the underlying action).

Duncan, through its counsel in this federal court litigation, Keating Law Group, and specifically Mr. Buckwalter, also filed a discovery motion pursuant to the court's Civil Standing Order, seeking a protective order or an order quashing the subpoena issued to McCormick Barstow. (ECF No. 109.) Defendants Amtrust North America, Inc. and Wesco Insurance Company  (collectively Amtrust/Wesco) filed a response to the discovery motion filed by

Mr. Buckwalter on behalf of Duncan. (ECF No. 114.)

On June 27, 2024, the day before any response was due to the motion filed by Mr. John, he also filed a reply in response to the opposition filed by Amtrust/Wesco to Duncan's motion filed by Mr. Buckwalter. (ECF No. 121.) On June 28, 2024, Amtrust/Wesco filed their response to Mr. John's motions. (ECF No. 122.) Amtrust/Wesco also filed a motion to strike Mr. John's reply brief as improper. (ECF No. 124.) The court granted the motion to strike Mr. John's reply brief. (ECF No. 131.)

The court held a hearing on the motions on July 1, 2024, and issues the instant Order granting the motions insofar as they seek to modify the subpoena, and denying Mr. John's motion for sanctions.

**I. BACKGROUND**

Plaintiff Samantha Beauchamp was injured in September 2019 while riding in a golf cart when she was volunteering at a fundraising golf tournament at Lakeridge Golf Course for the benefit of Nevada Youth Empowerment Project (NYEP). She filed a lawsuit against Duncan in State court (the underlying action). (ECF No. 103-2.) Duncan was defended in that action by its insurer, United Fire Group, through the law firm of McCormick Barstow, and specifically by Mr. John. The action proceeded to a bench trial before State court Judge Kathleen Sigurdson in the summer of 2023, which resulted in Judge Sigurdson entering a verdict in favor of Beauchamp and against Duncan for the sum of nearly ten million dollars. (ECF No. 103-3.)

Beauchamp and Duncan then presented Judge Sigurdson with a stipulation requesting judicial assignment to Beauchamp of causes of action Duncan might have against NYEP and its liability insurers Amtrust/Wesco. Judge Sigurdson entered an order for judicial assignment of those claims, subject to retention by Duncan and its insurer, United Fire Group, of claims for

defense costs and $500,000 in indemnity. The notice of removal asserts that Judge Sigurdson granted Ducan's motion for determination of good faith settlement, which confirmed that Beauchamp promised not to sue or enforce the judgment against Duncan beyond the sum of $500,00, and found the assignment made by Duncan and United Fire Group was made in good faith. (*See* ECF No. 1 at 3:14-18.)

Duncan and Beauchamp (the latter as assignee and real party in interest) filed suit in State court against NYEP, Amtrust, and Wesco asserting claims for: (1) declaratory relief against Amtrust/Wesco; (2) breach of contract by Duncan against NYEP; (3) detrimental reliance by Duncan against NYEP; (4) breach of contract (duty to defend) by Duncan against Amtrust/Wesco; (5) breach of contract (duty to indemnify) by Duncan and Beauchamp against Amtrust/Wesco; (6) breach of the covenant of good faith and fair dealing by Beauchamp against Amtrust/Wesco; and (7) unfair claims practice violations by Beauchamp against Amtrust/Wesco.

Duncan alleges that it tendered its claim for defense and indemnity to Amtrust/Wesco more than once, on the basis that the Fundraising Events Blanket Endorsement in NYEP's policy provided coverage to Duncan for Beauchamp's injuries. Amtrust/Wesco refused to defend or indemnify Duncan for the claims asserted by Beauchamp. Duncan contends that Amtrust/Wesco were given notice of the State court trial, but Amtrust/Wesco did not intervene or participate in the underlying action. (ECF No. 1-2.)

Amtrust/Wesco removed the action to federal court on December 27, 2023. (ECF No. 1.) Beauchamp filed a motion to remand on December 28, 2023, which Duncan joined (ECF No. 6), and that motion is fully briefed and currently pending before District Judge Traum. (ECF No. 5.)

Amtrust/Wesco have also filed a partial motion to dismiss (ECF No. 17), which is fully briefed and pending before District Judge Traum.

On May 23, 2024, Amtrust/Wesco issued a subpoena duces tecum to the custodian of records for McCormick Barstow, seeking to production of: (1) its entire file relating to the claim and underlying lawsuit concerning Beauchamp's accident in September 2019; (2) all written or digital communications in its custody and control relating to or arising from the underlying lawsuit; (3) all reports, memoranda, or correspondence in its custody and control that relate to or arise from the underlying lawsuit; and (4) any policy of liability insurance, including primary, excess or umbrella insurance, under which any insurer afforded coverage to Duncan in effect in September 2019. (ECF No. 103-1.)

The subpoena to McCormick Barstow was served on May 31, 2024, which happened to be Mr. John's last day with the firm before he moved to Wood Smith. (ECF No. 103 at 2.) He accepted service of the subpoena, and he subsequently met and conferred with counsel for Amtrust/Wesco, asserting that the subpoena was overbroad and unduly burdensome, seeks irrelevant information and seeks information and documents protected by the attorney-client privilege and work product doctrine, as well as information and documents not proportional to the needs of the case. Counsel were unable to reach an agreement, and as a result, Mr. John filed this motion for a protective order and seeks sanctions on behalf of Duncan, maintaining that as counsel in the underlying action, he and his fellow attorneys that worked on the underlying action have an ongoing duty to Duncan to preserve the attorney-client privilege and work product protection. The motion asserts that the subpoena is overbroad and unduly burdensome on its face as it would require an attorney to review thousands of documents to determine whether each is privileged (noting there are over 2,000 emails in the file alone). He argues that the court should issue a protective order that "disallow[s] the subject subpoena."

1    Duncan's current counsel in this litigation, Mr. Buckwalter, also filed a motion on behalf
2 of Duncan seeking a protective order or an order quashing the subpoena issued to McCormick
3 Barstow. Like Mr. John's motion, this motion argues that the subpoena seeks documents from
4 McCormick Barstow from the underlying action that include privileged communications between
5 Duncan, its counsel, and its insurers. Duncan also maintains that the subpoena, on its face, is
6 overbroad and not proportional to the needs of the case.

## II. DISCUSSION

### A. Meet and Confer

Amtrust/Wesco argue that there was not an adequate meet and confer by Mr. Buckwalter before his motion was filed, and therefore, the motion should be denied.

At the hearing on these motions, the court discussed its general displeasure with the efforts made to meet and confer to resolve discovery issues that have arisen in this case to date, cautioning the parties that further shortcomings in this area will result in the court requiring counsel to meet and confer in person at the federal courthouse in Reno. Mr. Buckwalter and Mr. Oldham (counsel for Amtrust/Wesco) disagree about the sufficiency of Mr. Buckwalter's efforts to meet and confer before Mr. Buckwalter filed his motion. It is undisputed, however, that counsel for Amtrust/Wesco had various discussions with Mr. John where Mr. John asserted Duncan's position—which is the position being asserted in both the motion filed by Mr. John and the motion filed by Mr. Buckwalter. Under these unique circumstances, the court finds the meet and confer efforts were sufficient. However, the court again cautions counsel for both sides to undertake a sincere effort to resolve any future discovery disputes in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Civil Standing Order or the court will order counsel to meet and confer in person at the federal courthouse in Reno.

**B. Request to Strike Mr. John's Motion**

In its response to the discovery motion filed by Mr. Buckwalter, Amtrust/Wesco ask the court to strike the motions filed by Mr. John, pointing out that neither Mr. John nor his firm are counsel of record for Duncan in this action.

The court denies Amtrust/Wesco's request for several reasons. First, the request was not filed as a motion, but it is imbedded in a response. Mr. John was not permitted to respond to this request, and in fact, when he attempted to do so, Amtrust/Wesco moved to strike his brief. Second, the court finds that under the circumstances presented here, it will accept the motion filed by Mr. John. As will be discussed in further detail below, the subpoena was served on McCormick Barstow when Mr. John was still a partner at that firm, and Mr. John accepted service of the subpoena. Moreover, when he left the firm, Mr. John represents that he took the physical file from the underlying action with him and also has access to the electronic file.

**C. Motions to Quash or Modify the Subpoena**

Rule 45 requires the court to quash or modify a subpoena that: "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

Both motions argue that the subpoena requires the disclosure of privileged or protected information and also subjects Duncan to undue burden.

Amtrust/Wesco argue that Duncan lacks standing to quash a subpoena issued to a non-party on the grounds of relevance or undue burden, and insofar as it claims privilege, they contend that claim does not apply because Duncan has not provided a privilege log. They further argue that Rule 45 does not contemplate a party asserting a privilege on behalf of a non-party.

"'Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.'" *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 973 (C.D. Cal. 2010) (quoting 9A Charles Wright & Arthur Miller, Federal Practice & Procedure, § 2459 (3d ed. 2008)).

Duncan has standing to move to quash or modify Amtrust/Wesco's subpoena to McCormick Barstow based on a claim of privilege as to the requested documents. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *Hall CA-NV, LLC v. Ladera Dev., LLC*, No. 3:18-cv-00124-RCJ-WGC, 2019 WL 5448458, at *8 (D. Nev. Oct. 24, 2019), *aff'd by Hall v. Ladera,* 2020 WL 1033560 (D. Nev. Mar. 2, 2020) (where a party claims compliance with a subpoena directed to its former counsel would require disclosure of privileged or protected material over which it holds the privilege, the party has standing to challenge the subpoena served on the third party law firm).

The subpoena seeks McCormick Barstow's entire file relating to the underlying action which quite obviously would include documents and information subject to the attorney-client privilege and work product doctrine.

Amtrust/Wesco acknowledge the subpoena seeks privileged/protected documents and information, but they maintain they are nevertheless entitled to discover this information because it is their position that Duncan has to show that Amtrust/Wesco's lack of defense led to the underlying judgment. In other words, Duncan has to show they were not adequately defended. Amtrust/Wesco contend that the file is therefore directly relevant to this issue. Amtrust/Wesco do not, however, cite any authority where a court has ignored the attorney client privilege and attorney work product doctrine and ordered a law firm to produce its entire file to an adversary. To do so would directly flout the purpose intended by the attorney client privilege and work

7

product doctrine: "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted). "Neither a subpoena duces tecum, nor any other procedure in a civil action, may be used by a party to obtain privileged documents; the policy protecting privileged communications simply is too strong to allow subpoenas to undermine it." 9A Wright & Miller, Federal Practice and Procedure, § 2458 (3d ed. 2008).

As such, the court will grant the motions to modify the subpoena such that Amtrust/Wesco are precluded from seeking privileged or protected attorney work product. Amtrust/Wesco are similarly prohibited from seeking privileged/protected communications between counsel for Duncan in the underlying action and Duncan's insurer.[1]

Amtrust/Wesco argue that in order to invoke the attorney-client privilege and work product doctrine, Duncan is required to provide a privilege log. Under the facts presented here, the court disagrees. The court finds persuasive the case of *Casun Invest A.G. v. Ponder*, 2:16-cv-02925-JCM-GWF, 2019 WL 2358390 (D. Nev. June 4, 2019). In that case, the defendants served a subpoena on an attorney and her law firm and the defense similarly argued that a privilege log was required. Magistrate Judge Foley ruled that the argument "misses the mark" where the subpoena is directed to "an attorney and her law firm who likely possess numerous documents relating to confidential communications with their clients, or attorney work product." *Id.* at *6. In that case, Judge Foley concluded that the subpoena was "grossly overbroad," and as such, the attorney and her law firm "could not reasonably be required to provide a privilege log for all of

---

[1] To the extent Amtrust/Wesco seek the production of insurance policies that may have provided coverage to Duncan for the incident involving Ms. Beauchamp, they may seek such information directly from Duncan.

the confidential attorney-client communications or work product material in their possession, many of which are likely irrelevant to the claims and defenses in th[e] case." *Id*.

Here, the subpoena is similarly overbroad on its face. Despite efforts by Mr. John in the meet and confer to have Amtrust/Wesco limit the request to non-privileged information, Amtrust/Wesco refused to modify their subpoena. They maintain, without justifiable explanation, that they are entitled to the *entire* file from the underlying action, which unquestionably contains voluminous documents that are attorney-client communications and attorney work product. Mr. John estimated the file spanned four years and likely contains upwards of 50,000 to 100,000 pages, and at least 2,000 emails. It would be an obvious burden to require Mr. John or Duncan's current counsel in this litigation to pore over the entirety of the law firm's file to create a privilege log for information that Amtrust/Wesco are clearly not entitled to.

Next, Amtrust/Wesco argue that Duncan cannot move to quash or modify the subpoena based on an argument that the subpoena is overbroad or unduly burdensome as only the subject of the subpoena—McCormick Barstow—can do so. This proposition is generally true. *See Anstead v. Virginia Mason Med. Ctr.*, 2:21-cv-00447-JCC-JRC, 2023 WL 34505, at *2 (W.D. Wash. Jan. 4, 2023), *reconsideration denied*, 2:21-cv-00447-JCC-JRC, 2023 WL 1433650 (W.D. Wash. Feb. 1, 2023) ("This court agrees with other district courts in the Ninth Circuit that a party generally lacks standing to object to a subpoena served on a third party on grounds of relevance or undue burden.") (citing cases); *Fauceglia v. Univ. of S. Cal.*, CV-19-04738-FMO (JEMx), 2021 WL 6752008, at *1 (C.D. Cal. Sept. 7, 2021) (citing cases).

The court finds, however, that this case presents a unique scenario where Duncan is entitled to assert undue burden and overbreadth as grounds to quash or modify the subpoena. The subpoena was served on McCormick Barstow and Mr. John accepted service of the subpoena

9

while he was still a partner at McCormick Barstow. He was the partner handling the file for the underlying action. Once he left McCormick Barstow, he took the physical file with him to his new law firm, and he and McCormick Barstow both maintain the electronic file.[2] Under these unique circumstances, where Mr. John has custody of the file from the underlying action and accepted service of the subpoena, the court finds that Mr. John appropriately raised the arguments that the subpoena was overbroad and unduly burdensome on its face.

Moreover, Dunca does have a right or interests in the documents sought. *See Crispin*, 717 F.Supp.2d at 974 (party has standing to quash or modify subpoena where they claim some personal right or privilege in the documents sought). The documents are being sought from Duncan's litigation file that is in the possession of its former counsel. *See In re Hotels Nevada, LLC*, 458 B.R. 560, 567 (Bankr. D. Nev. 2011) (citing Nev. Rev. Stat. 7.0555) ("the file amassed by an attorney in representing a client belongs to the client").

It is also important to point out that while the burden of reviewing the file for responsive documents would be borne by Duncan's counsel, ultimately the burden would also fall on Duncan because presumably it would be billed for the substantial time its attorneys spend on reviewing the voluminous file.

Apart from the subpoena seeking privileged material, the court finds the subpoena is otherwise overly broad and unduly burdensome. The litigation file from the underlying action spanned four years, and Mr. John estimated that it likely contains 50,000 to 100,000 pages of documents. The subpoena requests the entire file from the underlying action, without attempting to limit the requests to those documents relevant to claims or defenses being asserted in this

---

[2] At the hearing, Mr. John could not be certain that McCormick Barstow had transferred the entirety of the electronic file to him

action or to non-privileged information. Some of the file may have no relevance to the claims and defenses being asserted in this action. Moreover, it is likely that some of the information sought by the subpoena is public record or has otherwise been provided to Amtrust/Wesco by the parties. Finally, Mr. John offered to produce non-privileged relevant information from the underlying action to Amtrust/Wesco (including discovery, pleadings, motions, trial exhibits, depositions, expert reports, the judgment, *etc.*). (*See* ECF No. 122 at 14.) Amtrust/Wesco would still not agree to limit their subpoena.

In sum, the court will also grant the motions to modify the subpoena insofar as it is overly broad and unduly burdensome (with further guidance set forth, *infra*).

**D. Sanctions**

Mr. John's motion seeks an order that Amtrust/Wesco be required to pay the expenses incurred in preparing the motion for protective order under Federal Rule of Civil Procedure 26(c)(3) and Rule 37(a)(5). He also relies on Nevada Revised Statute (NRS) 7.085.

Preliminarily, NRS 7.085 is a State statute provides for the imposition of sanctions against an attorney (personally) who "maintain[s] or defend[s] a civil action or proceeding *in any court in this State* and such action or defense it not well-grounded in fact or is not warranted by existing law…" or "[u]nreasonably or vexatiously extend[s] a civil action or proceeding before *any court in this State*[.]" NRS 7.085 (emphasis added). NRS 7.085 applies to actions or proceedings in *State court*, not federal court.

A request for sanctions in connection with a subpoena is governed by Rule 45(d), and in this instance, Rule 45(d)(1), as sanctions under Rule 45(d)(1) apply to parties and non-parties, while cost-shifting under Rule 45(d)(2)(B)(ii) applies only to non-parties. *See Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).

1    Rule 45(d)(1) requires the party or attorney serving a subpoena to "take reasonable steps
2 to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P.
3 45(d)(1). The court "must enforce this duty and impose an appropriate sanction – which may
4 include lost earnings and reasonable attorney's fees—on a party or attorney who fails to
5 comply." *Id*.

6    Sanctions under Rule 45(d)(1) are discretionary. *See Legal Voice v. Stormans, Inc.*, 738
7 F.3d 1178, 1185 (9th Cir. 2013). The Ninth Circuit has clarified that undue burden exists "when
8 a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with
9 existing law." *Id.*

10   Mr. John's motion does not address the imposition of sanctions under Rule 45(d)(1);
11 therefore, his motion for sanctions is denied.

### III. CONCLUSION

13   Amtrust/Wesco's request to strike Mr. John's motion is **DENIED**.

14   The motions (ECF Nos. 103 and 109) are **GRANTED** insofar as they request to modify
15 the subpoena. Counsel for Amtrust/Wesco is required to meet and confer with counsel for
16 Duncan (Mr. John and Mr. Buckwalter) via videoconference to narrow the scope of the requested
17 information. Mr. John, in turn, shall confer with his former colleagues at McCormick Barstow to
18 ensure he has the entirety of the physical and electronic file for the underlying action.
19 Amtrust/Wesco is not entitled to discovery of attorney-client privileged material or work
20 product. Amtrust/Wesco is entitled to discover non-privileged, relevant information, in a manner
21 that is not burdensome. This may include, for example, communications between counsel for
22 Duncan and counsel for Ms. Beauchamp in the underlying action, and other non-privileged file
23 materials such as motions, discovery, deposition transcripts, and expert reports, unless it has

already been provided this information by the parties or Amtrust/Wesco has public access to this information.

The court notes that communications between counsel for Beauchamp and counsel for Duncan during the underlying litigation are relevant because Amtrust/Wesco have represented that they intend to pursue a collusion defense in this case. That defense is based, at least in part, on irregularities in the underlying trial, including that the trial judge closed the proceeding to the public and there was no court reporter for the trial. Amtrust/Wesco have not yet formally asserted this affirmative defense because they have a pending motion to dismiss and have not filed an answer yet, but they have continuously represented they will be pursuing this defense. The information is still discoverable even though Beauchamp and Duncan will litigate the viability of the defense. The parties can meet and confer regarding an appropriate date range for production of the communications between counsel for Beauchamp and counsel for Duncan during the underlying litigation.

Mr. John's motion for sanctions (ECF No. 104) is **DENIED**.

**IT IS SO ORDERED**.

Dated: July 10, 2024

_____
Craig S. Denney
United States Magistrate Judge